(112 App. Div. 667)

### JOHNSON v. ONONDAGA PAPER CO.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

1. MASTER AND SERVANT—GUARDING MACHINERY—QUESTION FOR JURY.

   Whether it is practicable to guard a particular belt and pulley, as required by Labor Law 1892, p. 1375, c. 673, § 8, providing that all gearing, belting, shafting, set screws, and machinery contained in a manufacturing establishment shall be properly guarded, is for the jury.

2. SAME—INJURY TO SERVANT—DEFECTIVE APPLIANCES—NOTICE TO EMPLOYER—NECESSITY.

   An employé injured in consequence of being caught in an unguarded belt and pulley need not, in order to recover, prove that the employer or any superior person had personal knowledge of the defect, though the employé knew thereof, and did not give notice.

   [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 243–246.]

Appeal from Trial Term, Onondaga County.

Action by Marshall Johnson against the Onondaga Paper Company. From a judgment dismissing the complaint, and in favor of defendant for costs, plaintiff appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Frank C. Sargent, for appellant.
T. E. Hancock, for respondent.

NASH, J. The action was brought to recover damages resulting to the plaintiff through the alleged negligence of the defendant by reason of his right foot slipping upon a grease or oil spot upon the floor, causing him to be thrown down, and in falling his left foot and ankle were drawn into an unguarded belt and pulley, which the defendant maintained in violation of the so-called "Labor Law" (chapter 673, p. 1372, Laws 1892), section 8 of which provides that all gearing, belting, shafting, set screws, and machinery of every description contained in a manufacturing establishment shall be properly guarded.

At the time of the injury complained of, the plaintiff was in the employ of the defendant at its paper mill at Marcellus Falls, Onondaga county, as a "back tender" upon a paper machine, where he had been employed for about a year. As such, his duties called him to assist in feeding the machine, and to oil it whenever necessary. The machine was a standard paper-making machine known as a "Fourdrinier Machine," about 75 feet long, 68 inches wide, and 3 feet high. It had along the top of the machine a series of tube rolls, carrying a wire screen, over which the pulp goes, and as the pulp is carried over the screen water is sifted out, and in oiling the ends of the tube and other parts of the machinery oil gets on the floor, and there is always considerable water on the floor around the machine. The pulley, belt, and shafting connected with the screen shaft and the fan pump, from which the power was transmitted to this machine, were changed eight days before this accident. Before these changes were made there was a single pulley and shaft. These were removed, and new and different pulleys and shafting installed, which were placed in a different location; two pulleys in the place of a single pulley, having other belts and shaftings. During the eight days after the new belt and pulleys were installed, and at the time of the accident, the belt and pulleys were unguarded; there were no guards, protection, or covering over either belt or pulleys, of any kind. The plaintiff at the time he was injured went behind the machine for the purpose of oiling the tube rolls, and was between the "fan pump pulley belt" and the side of the machine, and trying to work himself around betwen the fan pump pulley and the fan pump. The fan pump was 1½ feet from the belt, operated by a shaft. He was in the act of stepping over this shaft, and at the same time stepping under this feed box, and while in a stooping, crouching position astride the fan pump, his head about three feet from the floor, he slipped upon the grease or oil on the floor. In falling his left foot caught between the upper part of the pulley and under the upper belt. His foot went around the pulley, and broke his leg, and permanently injured his ankle and foot.

Upon the motion for a nonsuit the learned justice in announcing the decision said that under the statute the defendant is not liable, except where the servant gives notice to the employer of the negligence of which he complains, except where it shall appear that the defect or negligence was known to the employer. That meant personal knowledge, not constructive notice. Plaintiff must show actual knowledge, assuming that the servant knew of the defect, and did not give notice; that the pulley which had been changed eight days before was put up by somebody undoubtedly in the employ of the company, but it may not have been done with the knowledge of the company. The court permitted the case to be reopened, and the plaintiff recalled to give further evidence, and the motion for a nonsuit was renewed. The court in granting the motion said:

"I will grant the motion simply on the ground that there is no evidence from which the jury might find personal knowledge on the part of the employer or any superior person of the defect of which complaint is made."

The appellant cites Twist v. City of Rochester, 37 App. Div. 307, 55 N. Y. Supp. 850, where this court held that—

"It was no defense that the charter of the city provided that it should not be liable for any unlawful obstruction of a roadway, unless actual notice of the unsafe condition had been given to the city officers having charge of the highways a reasonable time before the happening of such injury, as, in so far as the city was liable for the negligent construction of the patrol line and its acts in that connection, it needed no actual notice, because it was presumed to know its own acts, and therefore had such notice."

We think the rule there held is applicable here, and therefore the nonsuit was erroneously granted.

Whether it was practicable or feasible to inclose or guard the particular belt and pulleys is a question for the jury, and should be left open for determination when the case is fully presented upon all the evidence that may be adduced upon a new trial; as also the question whether the plaintiff voluntarily and unnecessarily chose an unsafe method of oiling the machine at the place where he was injured. The circumstances in this respect may be made clearer upon another trial. We place our decision solely upon what we regard as an erroneous conclusion of the court upon the question of the notice which defendant must be deemed to have had of the condition of its machinery.

The judgment should be reversed, and a new trial granted.

Judgment reversed, and new trial ordered, with costs to the appellant to abide event. All concur.